Stevenson et al. *v.* Sarfert, Appellant.

.Argued January 4, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Thomas Raeburn White,* of *White, Schnader, Maris & Clapp,* with him *Wayland H. Elsbree,* for appellant.—If other causes exist which might have been responsible for the accident, and they are not excluded from consideration by the evidence, the jury will not be permitted to guess as to what actually did cause the accident and the case must be withdrawn from their consideration: McAvoy v. Kromer, 277 Pa. 196; Stahl v. Sollenberger, 246 Pa. 525; Rittle v. Zeller, 100 Pa. Superior Ct. 516.

*Walter I. Summerfield,* of *Summerfield & Romm,* for appellee, cited as to negligence of defendant: Frank v. Cohen, 288 Pa. 331; Rankin v. Baking Co., 272 Pa. 108; Johnson v. Abbotts Dairies, 295 Pa. 548.

OPINION BY MR. JUSTICE MAXEY, March 27, 1933:

The minor plaintiff, a child five years old, was injured by an automobile while on his way home from school shortly after twelve noon on December 18, 1930. His school was on the northeast corner of Paul and Unity Streets, about 130 feet from the scene of the accident. On the west side of Paul Street there was another school about 150 feet south of the spot where the child was struck. With two companions this boy was proceeding south on the sidewalk on the east side of Paul Street. The block between Unity Street and Culvert Street, which is southward, was 251½ feet long. About 100 feet south of Unity Street and on the west side of Paul Street was a gas station owned by one Carpino. On the day in question Carpino's car was parked directly opposite the entrance to his gas station, and near the east curb of Paul Street. The opposite curbs were 26

feet apart. Just as the child reached the parked Carpino car, he was called by some boys standing on the west side of Paul Street, and leaving his companions began to cross Paul Street to join the boys who had called him. He proceeded in either a westerly or northwesterly direction to a point in the approximate center of Paul Street where he came in contact with defendant's car, sustaining injuries to his tongue, right knee, foot, and back. The lumbar injuries necessitated the removal of one of his kidneys.

Defendant at the time was driving his car in a northerly direction along Paul Street at a speed concerning which there was strongly conflicting testimony. One witness who saw the defendant's car when it was 75 feet from the point of the accident testified that the car was running at a speed of 45 miles an hour. It is apparent that defendant upon first seeing the minor plaintiff hastily applied his brakes and that his car thereafter skidded from 15 to 20 feet until the right front wheel caught the child's right foot, and then skidded three or four feet further. This fact was evidenced by the skid marks of the tires and the mark left by the shoe of the foot which was caught under the right front tire.

Defendant's car was a 1929 model about four and a half feet wide and the defendant himself declared it was in good condition. The streets were dry. It was testified that a car such as defendant's, and running at a speed of 15 miles an hour, would under like circumstances skid no more than six feet after the brakes were applied.

Paul Street at the scene of the accident was a school zone within which by signboards posted at both ends motorists were warned to reduce their speed to fifteen miles an hour. Section 1002 (b) 2 of the Act of May 1, 1929, P. L. 905, provides that all vehicles, except those restricted to lower maximum speeds, when passing a school building, during school recess or while children are going to or leaving school during opening or closing

hours, must reduce their speeds to a rate not exceeding fifteen miles an hour. The phrase "passing a school building" does not limit the application of this humane and salutary provision of the law to the space in the street immediately in front and back and at the sides of a school building. The presence at the sides of a street of groups of children should always stimulate a driver's caution. Defendant was aware of the fact that he was in a school zone; he had often seen the signboards in this zone and he knew that it was an hour when children customarily leave school for lunch. He testified that he saw some children on the west side of Paul Street, but none on the east side, which fact would indicate that he was inattentive to the side of the street on which he was driving. It was claimed on behalf of the plaintiff that the child was struck by the right front bumper of defendant's car; defendant claimed that the child walked or ran into the right front fender. The evidence on this point was conflicting.

The sole question for our determination now is: Should the court below have granted defendant's motion for judgment n. o. v.?

The following three legal principles when applied to this case answer this question in the negative:

First: Where a child of tender years is the victim of an alleged tort the sole question on the trial of the alleged tort-feasor is as to the latter's negligence. In order to be guilty of contributory negligence, a plaintiff must have failed to exercise due care, i.e., the care which would have been exercised under the same or similar circumstances by a man of ordinary, reasonable prudence. Obviously, the law should not and does not require such prudence in a child five years old: Quattrochi v. Pittsburgh Rys. Co., 309 Pa. 377, 164 A. 59.

Second: "On a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every

fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence": Guilinger v. P. R. R. Co., 304 Pa. 140, 144, 155 A. 293. There was testimony that the defendant was driving his car at a grossly excessive rate of speed 75 feet away from the point where the child was struck and the skid marks at the scene of the accident supported the allegation of excessive speed at that place and time.

Third: Where a car is being driven in the immediate vicinity of a schoolhouse, particularly at a time when school is being dismissed, the driver of the car must use special caution for the protection of children in that vicinity; under these circumstances it is his duty to bring his car under such control that it can be stopped on the shortest possible notice: Mulhern v. Phila. Homemade Bread Co., 257 Pa. 22, 101 A. 74; Rankin v. Ward Baking Co., 272 Pa. 108, 116 A. 58; Silberstein v. Showell, Fryer & Co., 267 Pa. 298, 109 A. 701; McMonagle v. Simpers, 267 Pa. 117, 110 A. 83.

It was contended by plaintiffs that the child left the east curb of the street at the south end of Carpino's car, thereby being at all times clearly visible to defendant; it was contended by defendant that the child left the east curb at the north end of Carpino's car, remaining invisible to defendant because of his small stature until defendant's car was almost upon him. The car struck the child three or four feet south of the driver's seat of the parked car. A person proceeding across from the north end of the parked car in a westerly or northwesterly direction, as all the testimony indicates the minor plaintiff was proceeding, would not be struck by a car traveling in a northerly direction, at a point at least six feet southwest of the point from which he commenced to walk or run, unless he darted back to that point, and as to such darting back there is no proof.

The jury was justified in finding that the defendant at the time of the accident was driving at a speed which amounted to negligence and that the negligence was the

proximate cause of the injuries the minor plaintiff sustained. If he had been driving his car at the required speed of 15 miles an hour in this school zone, he could have stopped in time to avoid this injury, for it is a legitimate inference from all the testimony that he saw this child at least fifteen feet before the car came into physical contact with him, and could have stopped in time to avoid doing injury if his car had been "under control" as this court has defined that phrase. See Galliano v. East Penn Electric Co., 303 Pa. 498, 503, 154 A. 805.

The case was for the jury and it was correctly submitted. The judgment is affirmed.