## Gaffney v. Collins

*Chanin & Frank*, for plaintiffs.

*Cunneen & Cunningham*, for defendant.

DOTY, J., August 18, 1964.—This matter is presently before the court on defendant's motion for judgment n. o. v. following a verdict rendered by the trial judge, who sat without a jury, in favor of minor plaintiff and his parents. After a careful review of the facts and the applicable law we are firmly of the opinion that defendant's motion must be denied.

Defendant did not assign any particular reason or reasons in support of his motion and he is not complaining about any ruling made at trial or the amount of the verdict. Defendant simply contends that there was no evidence on which he could have been found to be negligent. With this contention we cannot agree.

It is axiomatic that, at this posture of the case, the evidence and all inferences reasonably arising therefrom must be viewed in the light most favorable to plaintiffs. When viewed in that light the facts are as follows:

The accident occurred on November 26, 1960, on Leidy Avenue, a two-way street running east and west, 40 feet wide with 10-foot wide sidewalks. The south side of the street in the 4200 block where the accident occurred is an open lot on which many children played and were playing at this time. There were also a number of children playing on the north sidewalk.

The day in question was warm and sunny, the weather was clear and the street was dry. Minor plaintiff, then two and one-half years of age, was playing in front of his home at 4215 Leidy Avenue on the north side of the street when his football bounced into the street. The witness who so testified stated that she did not actually see minor plaintiff follow the football out into the street but she heard the noise of the brakes of defendant's car and when she again looked she saw minor plaintiff lying "in the middle of the street."

The police accident investigation officer testified that he investigated the scene of the accident, which occurred at 4:30 p.m., at 5:40 p.m., and again, accompanied by defendant, at 6:10 p.m. As a result of his investigation and interview with defendant, the officer testified that defendant had been travelling west on Leidy Avenue. The point of impact was in front of the building line of 4213 and 4215 Leidy Avenue. This officer also testified that there were a double set of skid marks beginning in front of the doorway of 4213 Leidy Avenue and these skid marks extended for 18 feet. The right wheel skid, closest to the curb, was 15 feet south of the North curb of Leidy Avenue. It was the right front bumper of defendant's car which made contact with minor plaintiff at a point about a

foot in towards the center of the car. The violence of the collision was such that it caused the child to be thrown two house fronts westward and his body came to rest in front of 4219 Leidy Avenue. Defendant admitted to the police officer that he was aware of children playing on the sidewalk and that he saw minor plaintiff as soon as he appeared between the parked cars.

After the impact, defendant drove the child to the hospital. In the course of that trip he admitted to wife plaintiff, the child's mother, that he "was in a hurry" and that he had been trying to save time because he was late.

Defendant, although in court, failed to testify. The trier of fact therefore could reasonably infer that had defendant testified his evidence would have been unfavorable to himself: Dommes v. Zuroski, 350 Pa. 206 (1944).

Defendant was aware of the presence of children playing in the area and had the duty of exercising a high degree of care because of their presence. In this regard the Supreme Court has stated:

"It becomes his (the driver's) duty in passing through or by these groups (of children) to bring his car under such control that it can be stopped on the shortest possible notice": Robb v. Miller, 372 Pa. 505 (1953). See also Paulson v. Gamble, 197 Pa. Superior Ct. 300 (1962).

Defendant relies upon the case of Flagiello v. Crilly, 409 Pa. 389 (1963). However, that case is clearly inapposite. In that case minor plaintiff was struck by a car driven by defendant. There were no eye witnesses to the accident. The child's mother testified that when she turned from what she was doing and looked, "All I could see was (the child) going up in the air." She went out of her house and found the child lying flat on

the ground. Defendant's automobile was stopped eight feet away. As the Supreme Court stated, page 392:

"There was no evidence (1) as to the speed of the Crilly car prior to or at the time of the accident; (2) as to where Ronald was or came from just prior to the accident; (3) as to whether, and if so, for how long before the accident Ronald was visible to a careful driver; or (4) as to the distance Joan Crilly had in which to stop in order to avoid hitting Ronald after Ronald's danger became apparent."

In short, a verdict in favor of plaintiff in that case would have been based upon mere conjecture and speculation. This is not so in the instant case.

In this case there was evidence that children were playing in the area and that defendant was aware of their presence. There was also evidence of skid marks starting 18 feet prior to the point of impact. The child was hit by the front bumper of defendant's car, and with such force as to hurl his body two houses forward.

It is extremely significant that the evidence makes crystal clear that the impact occurred when minor plaintiff was at least 14 or 15 feet out in the street from the north curb on which he had been playing just prior to the accident. In this regard the accident investigation officer testified that defendant had pointed out to him the point of impact as 14 feet south of the north curb. However, reviewing the evidence in the light most favorable to plaintiff, as we must, the officer testified that the right wheel skid was 15 feet south of the north curb so that the child must have been more than 15 feet out into the street at the point of impact, since he was hit by the front of the car.

Defendant told the officer that he was traveling at a speed of 10 miles per hour, a statement at variance with his admission to the wife plaintiff that he "was in a hurry," and was trying to save time because he was late. In any event he did tell the officer that he

saw the minor "as soon as he appeared between the parked cars," i.e., as the child stepped from the curb between the parked cars. Therefore, defendant by his own admission saw the child a time prior to the impact sufficient to enable this little two and one-half year old boy to travel at least 15 feet out into the street.

Moreover, since the width of a parked car is approximately six or seven feet, this defendant had a clear view of the child at least from the time the child passed the left hand, or street, side of the parked cars until he was hit. This means defendant had a clear and unobstructed view of the child for a time sufficient to enable the little boy to travel a distance of some eight feet.

These facts, corroborated by the 18 feet of skid marks prior to the impact, make it clear that defendant failed in his duty of exercising a high degree of care under these circumstances. Either he was going much faster than 10 miles per hour and could not stop his car "on the shortest possible notice," (Robb v. Miller, supra) or he was simply inattentive. Certainly, it cannot be said that defendant was not negligent as a matter of law. On the contrary, the record was ample to support the verdict.

Accordingly, and for the foregoing reasons, defendant's motion for judgment, n. o. v., is denied.